UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODRIGUES TALBERT,

    Plaintiff,

v.

BRYAN MORRISON[1], *warden*,

    Defendant.

Case No. 20-12853
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1] AND AMENDING THE CAPTION**

Rodrigues Talbert was convicted of first-degree felony murder following a bench trial in Wayne County Circuit Court. His conviction was affirmed on direct appeal, and he is serving a life sentence at the Lakeland Correctional Facility in Coldwater, Michigan. He has now filed, though counsel, a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Talbert's petition raises a single claim challenging the state courts' determination that *Brady* evidence that the prosecution suppressed at his trial was not material.

---

[1] Rodrigues Talbert is presently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan. *See* Michigan Department of Corrections Offender Tracking Information System ("OTIS"), https://perma.cc/9D65-BC96. The only proper respondent in a habeas case is the habeas petitioner's custodian, here, the warden of Lakeland. *See* Rule 2(a), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254. The warden at Lakeland is Bryan Morrison. Accordingly, the Clerk of Court is directed to amend the case caption to substitute Bryan Morrison as the respondent.

After reviewing Talbert's petition, the parties' briefing, and the state-court record, the Court finds that the state courts reasonably concluded that Talbert's claim is without merit. Accordingly, Talbert's petition will be denied.

## I. Background

### A. Facts

The testimony at Talbert's trial established that on February 3, 2006, Corey Phillips and Nicole Vaid drove from Kalamazoo, Michigan, to a house on St. Mary in Detroit. (ECF No. 6-15, PageID.888.) When they arrived, Vaid waited in the car while Phillips took a bag of marijuana inside. (*Id.* at PageID.890.) Soon, Vaid heard gunshots and saw two men in their twenties exit through the front door and get into a car. (*Id.* at PageID.891–893.) One of the men was carrying a long object. (*Id.* at PageID.894.) After the two men left, Vaid went into the house to check on Phillips. (*Id.* at PageID.895.) She saw "a lot of blood around him. And a lot of smoke coming off his body." (*Id.*) Vaid did not see the bag of marijuana (*id.* at PageID.896) and did not see anyone else in or around the house (*id.* at PageID.897). She did not recall if the men had the duffle bag with them when they came out of the house. (*Id.* at PageID.919.) And she testified that, before that night, she had never seen either of the men. (*Id.* at PageID.892–893.)

Following the shooting, the police recovered shell casings and found blood on the front door and on a microwave in the kitchen. (ECF No. 6-17, PageID.869, 873, 878, 996.) The blood on the microwave was bright red and smeared—indicating it was fresh blood. (*Id.* at PageID.873.) Initially, Talbert told police that it was not his blood

and that he had never been to the house. (*Id*. at PageID.852.) But a DNA expert opined that Talbert's DNA was a match for the DNA from the blood samples recovered from the house. (ECF No. 6-16, PageID.933.) At trial, defense counsel argued that Talbert had been in the house on the night of the shooting, had also been shot, and was an additional victim rather than the perpetrator of any crime. (*Id*. at PageID.974, 978.)

Also during the trial, there was evidence presented that other individuals regularly sold cocaine and marijuana out of the house—indicating many people came and went from the home. (*Id*. at PageID.955–960.) And defense counsel provided a police report from the Toledo Police Department, which indicated that a man named "Kenneth Brown" went to the St. Vincent Hospital in Toledo, Ohio, to be treated for gunshot wounds on February 4, 2006. (ECF No. 6-16, PageID.961–963.) The police report stated that Brown was a black male in his twenties who was driving home from Cleveland with his cousin when he was shot at a BP gas station by a man who got into an argument with the cousin. (*Id*.) When the police arrived at the hospital to speak with him, "Brown" fled and could not be located. (*Id*. at PageID.961.) To support the notion that Talbert was a shooting victim, defense counsel argued that Talbert was the "Brown" named in the police report. (*Id*. at PageID.971.)

In February and March of 2006, Vaid identified one of the men who exited the house as Harold Walton, first in a photographic lineup and then at Walton's preliminary examination. (ECF No. 6-15, PageID.909.) Ten years later, in 2016, Vaid identified Talbert as the other man who exited the house. (*Id*. at PageID.899–901.)

3

She identified Talbert first during an in-person lineup, (ECF No. 6-16, PageID.938), then at Talbert's preliminary examination, and finally at Talbert's trial (ECF No. 6-15, PageID.898–900).

### B. Procedural History

Talbert was convicted of first-degree felony murder and sentenced to life in prison following his bench trial. (ECF No. 6-18, PageID.1012–1013.) "[A]t sentencing, Talbert filed a motion for mistrial based on the prosecution[']s failure to provide him with information regarding Walton, who was charged with Phillips' murder in 2006. Neither Walton nor Walton's 2006 court file could be located at that time." *People v. Talbert*, No. 336843, 2019 WL 1370677, at *3 (Mich. Ct. App. Mar. 26, 2019). The trial court denied the motion, but "while Talbert's appeal was pending before [the Michigan Court of Appeals], his lawyer acquired a copy of the March 2006 preliminary-examination transcript from Walton's case." *Id.* The transcript showed that Vaid's testimony at Walton's preliminary examination was inconsistent with her testimony at Talbert's trial. Of most significance, at Walton's preliminary exam Vaid "testified that she could not see the men's faces 'in great detail,' and she stated that 'the first one who came out, I didn't see.'" *Id.* She explained that "she did see the second man, who she identified as Walton." *Id.* But during Talbert's trial, "she positively identified [Talbert] as one of the men, stating that there 'are just some things you never forget. And when I saw [Talbert's] face I remembered it.'" *Id.*

Based on the 2006 preliminary-examination testimony, "Talbert sought a remand to determine whether a *Brady*-violation occurred." *Id.* at *4. The Michigan

4

Court of Appeals "granted his motion, remanding with orders for the trial court to hold 'an evidentiary hearing and [render a] decision regarding the existence and relevancy of an alleged violation under *Brady* . . . .'" *Id.* (alterations in original) (citation omitted).

On remand, "the prosecution conceded that the preliminary-examination transcript had been suppressed and that it was favorable to the defense. However, it argued that the suppressed evidence lacked 'materiality.'" *Id.* The trial court agreed. *Id.* And the Michigan Court of Appeals affirmed Talbert's conviction on appeal, agreeing with the trial court that "although Vaid's identification testimony could have been further impeached by the 2006 preliminary-examination transcript, there is not a reasonable probability that, had the defense known about the suppressed evidence, that [sic] the result of the proceedings would have been different." *Id.* at *6. The Michigan Supreme Court denied leave to appeal. *See People v. Talbert*, 933 N.W.2d 278 (Mich. 2019).

So Talbert turned to this Court for relief, petitioning for a writ of habeas corpus under 28 U.S.C. § 2254. He argues the state courts' determination that the suppressed evidence was not "material" under *Brady* was unreasonable. (*See* ECF No. 1.) But on habeas review, that state court ruling is entitled to great deference. Thus, for the reasons explained below, Talbert's petition will be denied.

II.

The Antiterrorism and Effective Death Penalty Act of 1996, which governs this case, "circumscribe[s]" the standard of review that federal courts apply when

5

considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

A state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (citing *Williams*, 529 U.S. at 407–08). This "standard is difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The term "unreasonable" refers not to "ordinary error" or even to circumstances where the petitioner offers "a strong case for relief" but rather to "'extreme malfunctions in the state criminal justice syste[m].'" *Id*. "In other words, a federal court may intrude on

6

a State's 'sovereign power to punish offenders' only when a decision 'was so lacking in justification beyond any possibility for fairminded disagreement.'" *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (citing *Richter*, 562 U.S. at 103)).

### III.

Talbert's habeas petition contends the prosecution violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose evidence favorable to him prior to trial—specifically, by failing to disclose Vaid's testimony during Watson's 2006 preliminary examination. Echoing the Michigan Court of Appeals, *see Talbert*, 2019 WL 1370677, at *6, Talbert asserts that he could have used that evidence to impeach Vaid's trial testimony identifying Talbert as one of the men she saw running from the house where Phillips was murdered.

In *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999), the Supreme Court articulated the three essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have resulted. Here, the prosecution conceded (at the trial court and on appeal) that the 2006 preliminary examination testimony was suppressed and was favorable to the defense. So only the materiality element is at issue.

"Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002). "In determining whether 'withheld information was material and therefore prejudicial,' a reviewing court

7

considers 'it in light of the evidence available for trial that supports the petitioner's conviction.'" *Jalowiec v. Bradshaw*, 657 F.3d 293, 305 (6th Cir. 2011), *as amended* (Nov. 23, 2011). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 683 (1985). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Michigan Court of Appeals laid out the factual basis of Talbert's *Brady* claim in detail. To reiterate:

> Relevant to this issue, at sentencing, Talbert filed a motion for mistrial based on the prosecution's failure to provide him with information regarding Walton, who was charged with Phillips's murder in 2006. Neither Walton nor Walton's 2006 court file could be located at that time. The trial court denied the motion. Thereafter, while his appeal was pending before this Court, Talbert's lawyer acquired a copy of the March 2006 preliminary-examination transcript from Walton's case.
>
> Vaid testified at the examination, identifying Walton as one of the men who ran from the house after the shooting. However, she also testified that she could not see the men's faces "in great detail," and she stated that "the first one who came out, I didn't see." She explained that she did see the second man, who she identified as Walton. Yet, during Talbert's trial, she positively identified him as one of the men, stating that there "are just some things you never forget. And when I saw [Talbert's] face I remembered it." She also stated that there was no doubt in her mind that Talbert was one of the men who left the house after the shooting. There were additional discrepancies between Vaid's 2006 testimony and her 2016 testimony, including details on whether one of the men was carrying a long object that looked like a gun, whether Talbert was the man with a gun, whether Phillips took a bag of marijuana from the backseat, and why she and Phillips were visiting the home in the first instance. For example, in 2006 she testified she did not know why they were at the house and did not see Phillips take anything from the backseat, whereas in 2016 she testified Phillips was there to sell marijuana and took a bag of marijuana into the house with him.

8

> Based on the 2006 preliminary-examination testimony, Talbert sought a remand to determine whether a *Brady*-violation occurred. This Court granted his motion, remanding with orders for the trial court to hold "an evidentiary hearing and [render a] decision regarding the existence and relevancy of an alleged violation under *Brady*."
>
> On remand, Talbert filed a brief arguing that the preliminary-examination transcript was inadvertently suppressed and it was favorable to the defense as it would have significantly impeached Vaid's trial testimony and was also substantive evidence that she did not see the first man who exited the house. Talbert did not directly address the materiality of the evidence, however. In response, the prosecution conceded that the preliminary-examination transcript had been suppressed and that it was favorable to the defense. However, it argued that the suppressed evidence lacked "materiality." Specifically, the prosecution noted that although Vaid's identification testimony could be impeached, Talbert's DNA was found at the scene. Further, the prosecution noted that because of the DNA evidence linking him to the scene, Talbert's defense at trial was that he was "merely present" and was an additional shooting victim. In his reply brief, Talbert argued that the trial court had placed "significant weight" on Vaid's testimony and that, if the certainty of her identification was impeached, there would have been a reasonable doubt as to whether Talbert was guilty of felony murder. Following oral argument, the trial court found that Talbert did not establish the third element of a *Brady* violation, i.e. that the suppressed evidence was material.

*Talbert*, 2019 WL 1370677, at *3–4 (internal citations omitted).

The Michigan Court of Appeals affirmed the trial court's denial of Talbert's motion for a new trial. It first noted that the trial judge—who was also the finder of fact at the bench trial—indicated that he did not place "significant" weight on Vaid's identification of Talbert as one of the men who left the house, but instead found that Vaid's identification testimony was only part of the evidence that he considered in finding Talbert guilty. *Id. at* *4. The other evidence he considered included the fact that Talbert's DNA was a match with "bright red and smeared" blood that was found on the door of the house and on a microwave inside the house, and the fact that

9

Talbert "made a false exculpatory statement to law enforcement when he unequivocally [initially] stated that it was not his blood and that he had never been to the house on St. Mary's street." *Id.* at \*5. The Michigan Court of Appeals further explained that "unlike the identification testimony, other parts of Vaid's testimony remained consistent or she voluntarily explained the reasons for the inconsistencies before the prosecution and the defense were aware of the inconsistencies." *Id.*

The Michigan Court of Appeals also reasoned that Talbert chose to raise a defense at trial where he admitted to being present at the house on St. Mary's at the time of the shooting. *Id.* In so doing, Talbert chose not to argue that Vaid's identification was the only thing linking him to the crime scene at the time of the murder or that her identification was not worthy of belief. *Id.* Further, the Court reasoned that defense counsel could have focused on other evidence from Vaid's testimony at trial to impeach her identification of Talbert. *Id.* It concluded that, "[g]iven the already weak identification testimony, additional testimony impeaching Vaid's identification of Talbert was not likely to significantly impact either the defense theory of the case or her credibility with the court." *Id.*

The Sixth Circuit has found that "the test for materiality under *Brady* does not vary depending on whether the court hearing the *Brady* claim also presided over the bench trial." *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 227 (6th Cir. 2019). The relevant question for a reviewing court is "not whether the trial judge would have voted to convict regardless of the new evidence." *Id.* The question instead is "whether there was a reasonable probability that a generic, reasonable factfinder

10

would have had a reasonable doubt" if he knew of the withheld evidence. *Id.* at 227–28.

Based on the additional incriminating evidence presented at trial, there is not a reasonable probability that a "generic, reasonable factfinder" would have had a reasonable doubt of Talbert's guilt if they knew of Vaid's testimony from the 2006 preliminary examination. Accordingly, the Michigan Court of Appeals reasonably concluded that Vaid's testimony from Walton's 2006 conviction was not material under *Brady*.

For one, although Vaid had difficulty identifying the two men at Walton's preliminary examination in 2006, she subsequently positively identified Talbert as one of those men at a live line-up, at Talbert's preliminary examination, and at his trial. At trial, Vaid testified that she had no doubt that Talbert was one of the men who she saw leave the house after the shooting—noting that when "[she] saw his face, [she] remembered it." (ECF No. 6-15, PageID.899–901.)

For two, Vaid's subsequent identification of Talbert was supported by significant corroborating evidence. *See McNeill v. Bagley*, 10 F.4th 588, 600–03 (6th Cir. 2021) (finding that a suppressed police report, which indicated that a key eyewitness had initially failed to identify defendant from first group of photos he was shown, was not "material," as required to support a *Brady* claim, because there was other strong evidence of defendant's guilt, including subsequent identification by that same witness and other supporting eyewitness testimony).

11

First, Talbert's DNA was linked to fresh blood found smeared on the door to the house and on a microwave inside. The DNA evidence indicated Talbert's presence in the house at the time of the shooting and a rational trier of fact "could consider the DNA evidence to be powerful evidence of guilt. *See McDaniel v. Brown*, 558 U.S. 120, 132 (2010).

Second, by claiming to be another victim of the shooting, Talbert admitted to being at the house. The Michigan Court of Appeals noted that Talbert's defense at trial was "that he was merely present at the house on St. Mary's *at the time of the shooting*." *Talbert*, 2019 WL 1370677 at *5 (emphasis in original). And his counsel made the same argument in closing. (ECF No. 6-16, PageID.970–971, 976–977.) Accordingly, Talbert's own admissions corroborated Vaid's identification testimony and further support a finding that the suppression of her 2006 preliminary examination testimony was not material. *See e.g., United States v. Sorrell*, 811 F. App'x 975, 979 (6th Cir. 2020).

Additionally, a finder of fact "may infer consciousness of guilt from evidence of lying or deception." *People v. Unger*, 749 N.W.2d 272, 288 (Mich. 2008). Here, Talbert's defense necessitated that he admit he lied when he said he was shot in a BP gas station in Ohio. And that he lied to Detroit police when he told them that he had never been to the house on St. Mary's street and that the blood found in the home was not his. Such an admission of providing false exculpatory statements to police, was additional evidence supporting his guilt. What is more, when Toledo Police went to interview Talbert about the shooting, he fled from the hospital—more evidence

12

supporting a guilty verdict. *See Johnson v. Burke*, 903 F.2d 1056, 1062 (6th Cir. 1990) (noting that, under Michigan law, flight is relevant to show a defendant's consciousness of guilt).

In addition, evidence that is "merely cumulative" to evidence presented at trial is "not material for purposes of *Brady* analysis." *Brooks v. Tennessee*, 626 F.3d 878, 893 (6th Cir. 2010) (quoting *Carter v. Mitchell*, 443 F.3d 517, 533 n.7 (6th Cir. 2006)).

Vaid's testimony from Walton's 2006 preliminary examination was cumulative of other evidence available to impeach her identification testimony at trial. For example, the shooting took place at night while it was dark outside, making visibility difficult. (ECF No. 6-15, PageID.888–889.) At trial, Vaid could not remember whether a light over the front door of the house was on or off—and on further questioning, she admitted it was possible the front porch light of the house was off. (*Id.* at PageID.903.) She testified that the two men were at a distance from her, and she viewed them at an angle. (*Id.* at PageID.907.) She was unable to remember any distinctive features about either man, including whether they had facial hair. (*Id.* at PageID.908–909.) Vaid admitted that the amount of time she saw the two men was "very brief" and that she only saw the men's faces when they first exited the house. (*Id.* at PageID.914.) She also admitted that prior to testifying at trial, she was shown a photograph of Talbert which had a printout of his prior criminal record. (*Id.* at PageID.902–903.) And she admitted that she had picked Walton out as a potential suspect only after being shown his photograph by the police. (*Id.* at PageID.911.) She could not recall which of the two men had the object she described that looked like a gun. (*Id.* at

13

PageID.912.) Finally, Vaid admitted that she did not initially tell the police that her boyfriend was selling marijuana and had carried a gun. (*Id.* at PageID.922–924.) Given the existence of significant impeachment evidence that was available at trial, the Michigan Court of Appeals reasonably concluded that the result of the trial would not have been different if the 2006 preliminary examination impeachment evidence had been disclosed.

One final note. Talbert argues that had he known about the 2006 preliminary examination testimony he would not have elected to waive his right to trial by jury and proceed with a bench trial. But under *Brady,* "[m]ateriality pertains to the issue of guilt or innocence, and not the defendant's ability to prepare for trial." *Thorne v. Timmerman-Cooper*, 473 F. App'x 457, 465 (6th Cir. 2012) (quoting *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994)). Even if the defense would have employed different tactics if the suppressed transcript had been known, this is insufficient to prove materiality. *Id.* Indeed, "*Brady* is not a rule of discovery designed to help defendants decide tactical questions such as whether to waive trial by jury." *State v. Roussel,* 381 So. 2d 796, 799 (La. 1980).

## IV.

For the foregoing reasons, the Court DENIES Talbert's petition for a writ of habeas corpus. A separate order will issue on a certificate of appealability and proceeding in forma pauperis on appeal.

Dated: March 29, 2024

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE.